# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| Northeast Ohio Neighborhood Health Services, Inc., *et al.* | ) | CASE NO. 1:19-cv-02908-PAG |
| | ) | |
| | ) | JUDGE PATRICIA A. GAUGHAN |
| Plaintiffs, | ) | |
| | ) | |
| | ) | FIRST AMENDED COMPLAINT FOR |
| vs. | ) | BREACH OF CONTRACT AND |
| | ) | DECLARATORY JUDGMENT |
| Travelers Casualty and Surety Company of America | ) | |
| | ) | JURY DEMAND ENDORSED HEREIN |
| | ) | |
| Defendant. | ) | |

**PARAGRAPHS 24 AND 25 AND EXHIBIT 1 ARE CONFIDENTIAL AND REDACTED AND FILED UNDER SEAL PURSUANT TO JAN. 30, 2020 STIPULATED PROTECTIVE ORDER (ECF DOC. NO. 12)**

Plaintiffs Northeast Ohio Neighborhood Health Services, Inc. ("NEON") and Community Integrated Services, Inc., (hereinafter, "CIS" and collectively together with NEON, "Plaintiffs"), by and through counsel and for their First Amended Complaint against Defendant Travelers Casualty and Surety Company of America ("Defendant") hereby allege as follows:

## PRELIMINARY STATEMENT

1. This case arises from Defendant's failure to defend and indemnify Plaintiffs against liability resulting from the receipt of federal grand jury subpoenas and law enforcement's request to produce documents and interview current and former employees in connection with a federal grand jury investigation being conducted in the Northern District of Ohio. As a direct result of the federal grand jury investigation, Plaintiffs were required to engage counsel and incur significant expenses arising from the collection, analysis, and production of voluminous records,

1

negotiation of scopes of production and proffer agreements, preparation for and attendance at multiple witness interviews conducted by three separate federal agencies, and other matters necessary for the protection of their rights.  Plaintiffs, who obtained insurance to protect against the financial burdens imposed by such actions, timely notified Defendant of their claim. In response, and in violation of its contractual obligations, Defendant denied the claim and, to date, has refused to accept its coverage obligations.

## PARTIES

2.NEON is a not-for-profit Ohio corporation with its headquarters located at 4800 Payne Ave., Cleveland, Ohio 44103.  It is a Federally Qualified Health Center ("FQHC") network of community health centers dedicated to improving access to health care and reducing health disparities in Greater Cleveland.  NEON's mission is to provide quality, personalized, and family-oriented comprehensive health care services to Northeast Ohio residents at reasonable cost, with professional, dedicated employees.

3.CIS is a wholly owned subsidiary of NEON, and is a for-profit Ohio corporation with its headquarters located at 4800 Payne Ave., Cleveland, Ohio 44103.

4.Upon information and belief, at all times relevant hereto, Defendant is a Connecticut for-profit insurance corporation licensed to conduct business in Ohio and insure persons, property, or risk located in Ohio, with its headquarters located at 1 Tower Square, Hartford, Connecticut 06183.

## JURISDICTION AND VENUE

5.This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between the Plaintiffs and

Defendant and because the amount in controversy exceeds $75,000 exclusive of interest and costs.

6. This Court has personal jurisdiction over Defendant under Fed. R. Civ. P. 4 because Defendant conducts substantial business within the State of Ohio, is licensed to conduct the business of insurance in Ohio and contracted to insure a person, property or risk located in Ohio, namely, plaintiffs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) as a substantial number of the events or omissions giving rise to the claims asserted herein occurred in Cleveland, Ohio, which is within this Court's jurisdiction.

## GENERAL ALLEGATIONS

### *The Insurance Policy*

8. Defendant issued NEON an insurance policy, effective from February 24, 2018, through February 24, 2019 (the "Policy").  Defendant already has a copy of the Policy and, therefore, it is not attached hereto but can be made available upon request.  The Policy included a maximum of $2,000,000 in coverage.

9. The Policy requires, in part, Defendant to pay on behalf of "the **Insured Organization Loss** for **Wrongful Acts** . . . resulting from any **Claim** first made during the Policy Period . . . ." Policy at Sec. I, Insuring Agreements.[1]

10. Loss is defined, in relevant part, to include "**Defense Expenses** and money which an **Insured** is legally obligated to pay as a result of a **Claim**." Policy at Sec. II, Definitions at (R).

11. "Insured" is defined, in part, to mean "**Insured Organization**." Policy at Sec. II, Definitions at (N).

---

[1] Terms in bold indicate a defined term in the applicable Travelers insurance policy.

3

12. "**Insured Organization**" is defined in the Policy as "the **Named Insured** and any **Subsidiary**." Policy at Sec. II, Definitions at (O).

13. "**Wrongful Act**" is defined, in relevant part, as "any actual or *alleged* act, error, omission, misstatement, misleading statement or breach of duty or neglect by, *or* any matter asserted against the **Insured Organization**." Policy at Sec. II, Definitions at (Y) (emphasis in italics added).

14. Claim is defined, in relevant part, as a "written demand for monetary or non-monetary relief" and as "a formal administrative or regulatory proceeding, commenced by the filing of charges, formal investigative order, services of summons or similar document . . . against an **Insured** for a **Wrongful Act**." Policy at Sec. II, Definitions at B(1); (4).

15. Policy Period is defined as the period from the Inception Date, February 24, 2018 to the Expiration Date, February 24, 2019, as set forth in ITEM 2 of the Declarations. Policy at 5.

*The Underlying Claim*

16. On January 18, 2019, NEON and CIS individually were served with federal grand jury subpoenas requiring each entity to review their respective records and produce responsive documents (the "Underlying Claim"). True and accurate copies of the Confidential federal grand jury subpoenas have been filed under seal pursuant to the January 30, 2020 Stipulated Protective Order ECF Doc. No 12.

17. Federal grand jury subpoenas, by their very nature, derive from and are related to federal criminal investigations. A federal grand jury is empaneled for the express purpose of receiving evidence relating to an individual or entity's alleged criminal conduct in violation of the federal criminal laws. The U.S. Attorney's Office must open a matter regarding the alleged criminal violations before a federal grand jury subpoena can be issued and served upon an

individual or entity. The evidence is presented to the grand jury in a confidential, closed-door proceeding by United States prosecuting attorneys who are requesting that the grand jury vote to issue criminal indictments recommended by the prosecutors.

18. The primary investigative tool used by federal grand juries is the power to issue federal grand jury subpoenas compelling the production of records and sworn witness testimony.

19. Law enforcement officials and prosecuting attorneys, through the power of the grand jury, use the grand jury subpoena process to obtain documents relevant to their investigation. An individual or entity in receipt of a federal grand jury subpoena must respond to it, whether in the form of producing records, offering testimony, or asserting some form of privilege. The failure to respond to a federal grand jury subpoena could result in criminal sanctions. Individuals or entities responding to a federal grand jury subpoena must provide an affidavit or representation regarding the search for documents and the completeness of the production.

20. To further a federal grand jury investigation, law enforcement officials may also conduct voluntary witness interviews. Law enforcement may elect to conduct a witness interview instead of compelled, sworn witness testimony before the grand jury pursuant to a grand jury subpoena. A false statement made to a federal law enforcement officer is a violation of federal criminal law under Title 18, United States Code, § 1001.

21. Federal law provides for severe penalties in the event a party served with a grand jury subpoena does not respond, or responds inadequately. For example, both civil and criminal contempt charges can be brought against a party that does not respond to a federal grand jury subpoena. In addition, false statements in connection with providing an affidavit of compliance

with a grand jury subpoena *duces tecum* can result in a perjury charge against the responding party.

22.     Because of the seriousness of these matters, shortly after receiving the subpoenas, Plaintiffs retained counsel to represent Plaintiffs in the matter and assist with their response.

23.     Responding to the subpoenas included, among other things, counsel collecting, analyzing, and producing records to the government and the government interviewing several former and current employees with the assistance of retained counsel, all requiring Plaintiffs to incur substantial defense costs.



*Claim for Coverage*

26.     The subpoenas are written demands for non-monetary relief and/or formal administrative or regulatory proceedings, commenced by the filing of charges, formal investigative order, services of summons or similar document, and allege an act, error, omission, misstatement, misleading statement or breach of duty or neglect by, *or any matter asserted*

6

against the Insureds and, therefore, constitute a "Claim" against the Plaintiffs for a "Wrongful Act" as defined in the policy.

27. Through defense counsel, Plaintiffs tendered the Underlying Claim to Defendant seeking defense and indemnity coverage under the Policy's terms.

28. On April 1, 2019, Defendant denied coverage contending that no "Wrongful Act" had been alleged and, as a result, no "Claim" had been made.

29. Through counsel, Plaintiffs subsequently asked Defendant several times to reconsider its denial of coverage pursuant to the Policy's plain language definition of "Wrongful Act" which includes, in part, "any matter" asserted against the Insureds.

30. Despite Plaintiffs' request, Defendant continued to refuse to defend or indemnify Plaintiffs for the Underlying Claim, this time contending that the subpoenas do not constitute a "Claim" because they are not "written demand[s] for monetary or non-monetary relief" and were not issued as a result of "a formal administrative or regulatory proceeding, commenced by the filing of charges, formal investigative order, services of summons or similar document" and because they do not assert a "Wrongful Act" against the Insureds.

31. Plaintiffs have incurred attorneys' fees and expenses, and anticipate they will continue to incur attorneys' fees and expenses, in connection with the Underlying Claim for which Defendant has defense and indemnity obligations.

## COUNT ONE
### *Breach of Contract*

32. Plaintiffs incorporate the statements and averments contained in the above paragraphs as if rewritten here.

33. The subpoenas are "Claims" for a "Wrongful Act" asserted against the Insureds under the terms of the Policy.

34. The Policy has been in full force and effect during the relevant period.

35. All premiums due and owing under the Policy have been paid.

36. Plaintiffs have complied with all applicable conditions or other requirements of the Policy, including requirements for notice, claim reporting, and cooperation.

37. Under the terms of the Policy, therefore, Defendant has a duty to reimburse Plaintiffs for all Loss, including defense expenses and money paid arising from the Underlying Claim.

38. Defendant has breached its contractual obligation by refusing to reimburse Plaintiffs as required by the Policy.

39. As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been damaged, and likewise will continue being damaged by incurring substantial legal fees and other defense costs, for which Defendant has defense and indemnity obligations, in an amount in excess of $75,000, the exact amount of which is currently uncertain but shall be established at trial.

## COUNT TWO
### *Declaratory Judgment*

40. Plaintiffs incorporate the statements and averments contained in the above paragraphs as if rewritten here.

41. An actual case or controversy exists as to an insurance policy issued to a policyholder in this judicial district, sufficient to permit a declaratory judgment under 28 U.S.C. § 2201.

42. The subpoenas are "Claims" for a "Wrongful Act" asserted against the Insureds under the terms of the Policy.

43. Under the terms of the policy, therefore, Defendant is obligated to reimburse Plaintiffs all Loss, including attorneys' fees, costs, and expenses, without reservation or under claim of reimbursement, incurred in the Underlying Claim.

44. Defendant has failed or refused to recognize or honor its contractual obligations to Plaintiffs on the terms set forth in the policy.

45. An actual and justiciable controversy exists between Plaintiffs and Defendant with respect to Defendant's obligations under the Policy relating to the Underlying Claim.

46. The issuance of declaratory relief by this Court will resolve the existing controversy between Plaintiffs and Defendant as to the meaning and terms of the Policy.

47. Plaintiffs are entitled to a declaration by this Court of its rights and Defendant's obligations under the Policy relating to the losses described herein.

**WHEREFORE**, Plaintiffs pray that judgment be entered against Defendant as follows:

(a) Damages against Defendant in excess of seventy-five thousand dollars ($75,000.00);

(b) Declaration that Defendant, under the terms of the Policy, is obligated to reimburse Plaintiffs for all past, present and future Loss, including defense fees and other loss resulting from the Underlying Claim, without reservation or under claim of reimbursement;

(d) Prejudgment interest, costs, and attorneys' fees in amounts to be proven at trial; and

(e) All other relief as this Court may deem just, proper, equitable, and appropriate in Plaintiffs' favor.

Respectfully submitted,

*/s/ Jodi Spencer Johnson*

>Jodi D. Spencer-Johnson (0074139)
>Brouse McDowell LPA
>600 Superior Ave. E, Ste. 1600
>Cleveland, OH 44114
>Tel. (216) 830-6809
>Fax (216) 830-6807
>jjohnson@brouse.com
>
>P. Wesley Lambert (0076961)
>Christopher T. Teodosio (0089316)
>Brouse McDowell LPA
>388 S. Main St., Ste. 500
>Akron, OH 44311
>Tel. (330) 535-5711
>Fax (330) 253-8601
>plambert@brouse.com
>cteodosio@brouse.com

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues triable by a jury.

>*/s/ Jodi Spencer Johnson*
>Jodi Spencer Johnson (0074139)

## CERTIFICATE OF SERVICE

This is to certify that on February 26, 2020 the foregoing First Amended Complaint for Breach of Contract and Declaratory Judgment was filed via the Court's Electronic Filing System and served via electronic mail upon counsel of record for Defendant:

| | |
|---|---|
| Monica A. Sansalone (0065143) | Thomas J. Judge |
| Gallagher Sharp LLP | Dykema |
| 6th Floor – Buckley Building | 1301 K Street N.W., Suite 1100 West |
| 1501 Euclid Avenue | Washington, D.C. 20005 |
| Cleveland, OH 44115 | Tel. (202) 906-8600 |
| Tel. (216) 241-5310 | Fax (888) 886-6915 |
| Fax (216) 241-1608 | tjudge@dykema.com |
| msansalone@gallaghersharp.com | |

*Attorneys for Defendant*

<u>*/s/ Jodi Spencer Johnson*</u>
Jodi Spencer Johnson (0074139)