**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NORTHEAST OHIO NEIGHBORHOOD HEALTH SERVICES, INC., *et al.*, | CASE NO. 1:19CV2908 |
| Plaintiffs, | JUDGE PATRICIA A. GAUGHAN |
| v. | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | |
| Defendant. | |

Defendant Travelers Casualty and Surety Company of America ("Travelers") submits this Reply Memorandum in Support of its Motion to Dismiss the First Amended Complaint (ECF No. 22) and as a response to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss the First Amended Complaint (the "Opposition") (ECF No. 26).

**INTRODUCTION**

In seeking insurance coverage for subpoenas served on them, Plaintiffs ask the Court to ignore the lead of the United States Circuit Court of Appeals for the Sixth Circuit (applying the same Ohio law applicable here), along with that of the First and Tenth Circuits, and instead find that subpoenas are "demands for non-monetary relief," constituting a Claim subject to coverage. Alternatively, Plaintiffs argue that the subpoenas issued by a grand jury, to the extent part of any "proceeding," somehow should be considered part of a "formal administrative or regulatory proceeding," rather than a "criminal proceeding." The subject insurance policy (the "Policy") clearly differentiates between such proceedings, and requires a "notice of charges," which have not issued, for a "criminal proceeding" to be a Claim. Additionally, without any supporting factual allegations, Plaintiffs ask the Court to make the implausible leap that simply because Plaintiffs

received subpoenas, the grand jury investigation is actually a proceeding "against" Plaintiffs. Finally, in an unsuccessful attempt to satisfy the Policy's "Claim *for a Wrongful Act*" requirement, Plaintiffs essentially argue, contrary to the Policy's plain terms and practically every case cited by Travelers *and* Plaintiffs, that nothing has to be "asserted against" Plaintiffs for the subpoenas to be "for a Wrongful Act."

As shown below, Plaintiffs' arguments, at each and every turn, run afoul of the Policy's unambiguous terms, relevant precedent, and common sense. Accordingly, the Court should grant Travelers' Motion to Dismiss.

## ARGUMENT

### I. THE SUBPOENAS ARE NOT DEMANDS FOR NON-MONETARY RELIEF

Plaintiffs contend that the "weight of authority" holds that subpoenas are "demands for non-monetary relief." Opp'n at 8. In so contending, Plaintiffs ignore the fact that the three United States Circuit Courts of Appeals that have addressed the issue, including the Sixth Circuit applying Ohio law, have squarely rejected that position. *See Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc.*, 524 F. App'x 241, 251-52 (6th Cir. 2013); *BioChemics, Inc. v. Axis Reins. Co.*, 924 F.3d 633, 640 (1st Cir. 2019); *MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, 712 F. App'x 745, 754 (10th Cir. 2017).[1] In another part of its Opposition (Opp'n at 17-18), Plaintiffs attempt to distinguish these cases based on supposedly different policy language, but in each case the courts addressed whether subpoenas are "demands for non-monetary relief"—the very same phrase at

---

[1] Numerous District courts and state courts have also rejected the argument. *See MusclePharm Corp. v. Liberty Ins. Underwriters, Inc.*, No. 15-cv-00555-REB-KMT, 2016 U.S. Dist. LEXIS 192651, at *5 (D. Colo. Nov. 17, 2016); *RSUI Indem. Co. v. Desai*, No. 8:13-cv-2629-T-30TGW, 2014 U.S. Dist. LEXIS 122068, at *11-12 (M.D. Fla. Sept. 2, 2014); *Diamond Glass Cos., Inc. v. Twin City Fire Ins. Co.*, No. 06-cv-13105, 2008 U.S. Dist. LEXIS 86752, at *11 (S.D.N.Y. Aug. 18, 2008); *Foster v. Summit Med. Sys.*, 610 N.W.2d 350, 354 (Minn. Ct. App. 2000).

2

issue in the Policy here—and held that the phrase is unambiguous, and that subpoenas are not demands for non-monetary relief.

While avoiding direct reference to *ProMedica* and its appellate progeny, Plaintiffs effectively contend that the Sixth Circuit, along with the Tenth and First Circuit Courts of Appeals, decided the issue incorrectly because they improperly applied "technical legal definitions" to the term "relief." Opp'n at 10. Plaintiffs argue that, under Ohio law, the language must "be analyzed from the perspective of a lay person." *Id*. The Sixth Circuit, however, specifically consulted a common dictionary definition of the word "relief" ("'ease from or lessening of pain or discomfort'") and a legal dictionary definition ("the redress or benefit, esp. equitable in nature (such as an injunction or specific performance) that a party asks of a court'"). *ProMedica*, 524 F. App'x at 251 (citations omitted). Recognizing that Ohio law required giving an insurance policy term "'its common, ordinary, usual meaning,'" *id*. at 247, the court determined that subpoenas do not demand such "relief." *Id.* at 251-52.

In *MusclePharm*, the Tenth Circuit likewise consulted common and legal dictionaries in similarly defining the word "relief," and holding that a subpoena did not seek "relief" but instead sought to gather information to determine "whether there ultimately would be a basis for seeking . . . non-monetary relief." 712 F. App'x at 754 (citations omitted). The First Circuit, applying the term "relief" in its "'usual and ordinary sense,'" similarly held that subpoenas "were requests made . . . for information," not "requests made of a court for equitable redress or benefit." *BioChemics*, 924 F.3d at 640. These holdings, consistent with Ohio law, appropriately apply the commonly understood definition of "relief," particularly in the context of determining what is a "Claim" under a liability insurance policy. *See also ISCO Indus. v. Great Am. Ins. Co.*, No. C-180636, 2019 Ohio App. LEXIS 4949, at *24-25 (Ohio Ct. App. Nov. 27, 2019) (holding that a letter seeking

confirmation of certain information did not "demand non-monetary relief," when the party seeking the information "had not yet claimed any injury").

Finally, in attempting to reconcile their position with the holding in *ProMedica*, Plaintiffs contend that *ProMedica* held that a subpoena can be a demand for non-monetary relief when the subpoena is "from a court." Opp'n at 17. That is not the holding in *ProMedica*. Rather, the Sixth Circuit held that a "demand for non-monetary relief" is a demand "seek[ing] 'relief' in the form of redress or benefit from a court." *Id.* at 251 (emphasis added). The court held that the subpoenas sought information related to . . . [an] investigation, not a remedy provided by a court." *Id.* at 252. Under *ProMedica* and its progeny, whether a regulatory subpoena, a district court civil subpoena, or a grand jury subpoena, subpoenas are tools to gather information, they are not demands for redress or benefit from a court to rectify or prevent an injury. Indeed, in *ProMedica*, the Sixth Circuit specifically recognized that the Federal Trade Commission's ("FTC") broad investigatory powers were comparable to that of a grand jury. *Id*. at 248 (observing that, like a grand jury, the FTC "'can investigate merely suspicion that the law is being violated, or even just because it wants assurance that it is not'" (citation omitted)). Accordingly, investigatory subpoenas, such as the grand jury subpoenas here, are not "demands for non-monetary relief" under *ProMedica*.[2]

---

[2] The FTC investigatory subpoenas in *ProMedica*, like the grand jury subpoenas here and federal civil subpoenas, are enforceable in federal districts courts. *See, e.g.*, 15 U.S.C. § 49 (authorizing district courts to enforce FTC investigatory subpoenas). Moreover, as recognized by the Sixth Circuit and other courts, "'grand jury subpoenas . . . are in fact almost universally instrumentalities of the United States Attorney's office or of some other investigative or prosecutorial department of the executive branch. . . . This practical result flows from the manner in which the subpoenas are issued: "Like all federal court subpoenas grand jury subpoenas are issued in the name of the district court . . .; they are issued pro forma and blank to anyone requesting them."' *United States v. Smith*, 687 F.2d 147, 150 (6th Cir. 1982) (quoting *In re Grand Jury Proceedings (Schofield)*, 486 F.2d 85, 90 (3d Cir. 1973)). Thus, although entirely irrelevant here, the grand jury subpoenas did not come "from a court," but rather were directed from the U.S. Attorneys' office to facilitate the grand jury's investigation.

In *ProMedica*, the Sixth Circuit also effectively distinguished nearly all of the cases cited in Plaintiffs' Opposition at 9-10 that purportedly stand for the proposition that the subpoenas are demands for non-monetary relief.  The Sixth Circuit found Plaintiffs' cases "inapposite because they interpret policies that do not define 'claim' or define 'claim' without reference to 'relief.'" 524 F. App'x at 252 (distinguishing *Polychron v. Crum & Forster Ins. Cos.*, 916 F.2d 461 (8th Cir. 1990); *Dan Nelson Auto Grp., Inc v. Universal Underwriters Grp.*, No. CIV 05-4044, 2008 WL 170084 (D.S.D. Jan. 15, 2008); and *Richardson Elec., Ltd. v. Fed. Ins. Co.*, 120 F. Supp. 2d 698 (N.D. Ill. 2000)).  The Sixth Circuit also distinguished *Minuteman International, Inc. v. Great American Insurance Co.*, No. 03-C-6067, 2004 WL 603482 (N.D. Ill. Mar. 22, 2004), which is cited by Plaintiffs, because the insurance policy there, unlike the *ProMedica* policy or the Policy here, had no Wrongful Act requirement whatsoever and therefore the subpoenas did not have to redress or result from a Wrongful Act by the Insured.  *ProMedica*, 524 F. App'x at 252-53.[3]

Plaintiffs' argument that the subpoenas served on them are a "demand for non-monetary relief" cannot be reconciled with the Sixth Circuit's decision in *ProMedica* or the reasoned decisions from the First and Tenth Circuit Courts of Appeals.  As held in those cases, Plaintiffs' argument is contrary to the unambiguous meaning given to the term "relief."

---

[3] Plaintiffs also cite *Borstein v. National Union Fire Insurance Co. of Pittsburgh, Pa.*, 828 F.2d 242 (4th Cir. 1987), but that decision only analyzed whether an IRS investigation and a subsequent indictment were "proceedings brought by any government regulatory agency." *Id*. at 245.  The court provides no analysis or explanation as to how the proceedings were for "non-pecuniary relief." *Id.*

## II. THERE IS NO FORMAL ADMINISTRATIVE OR REGULATORY PROCEEDING AGAINST PLAINTIFFS

Plaintiffs alternatively argue that the subpoenas are a "Claim" because they "*arise from* formal administrative or regulatory proceedings." Opp'n at 11 (emphasis added). In doing so, plaintiffs write in the extraneous words—"arise from"—into the definition of a "Claim." The Policy defines a "Claim" as "*a* formal administrative or regulatory proceeding, commenced by a filing of charges, formal investigative order, services of summons or similar document . . . against an **Insured** for a **Wrongful Act**." Policy § II.B. (emphasis added). Contrary to Plaintiffs' effort to impermissibly rewrite the Policy, a "Claim" is not something that "arises out of" or is "issued pursuant to" a formal administrative or regulatory proceeding. Rather, the "Claim" is the formal administrative or regulatory proceeding itself against the Insured, but only if that proceeding is "commenced by a filing of charges, formal investigative order, service of summons or similar document." Policy § II.B.4. Plaintiffs allege nothing in their First Amended Complaint about a "formal administrative or regulatory proceeding . . . against" Plaintiffs that has been commenced by the filing or service of anything. Plaintiffs do not identify an administrative or regulatory agency that has commenced a formal proceeding or allege any filing of charges, formal investigative order, service of summons or similar document by any such agency, let alone allege facts to support a determination that any such formal administrative or regulatory proceeding has been brought "*against* Plaintiffs."

In *ProMedica*, the FTC commenced a "full phase" investigation directed at ProMedica through a formal resolution authorizing use of compulsory process and the subsequent issuance of subpoenas and other investigative tools to ProMedica. 524 F. App'x at 244-45. The Sixth Circuit ruled that the FTC's investigation was not a "proceeding." *Id*. at 251. The court held that the

6

FTC's resolution "did not commence anything; it merely permitted the use of compulsory process in connection with the FTC's ongoing investigation." *Id*.

Here, Plaintiffs do not allege any activity by regulators or administrative agencies other than their participation in interviews voluntarily provided by Plaintiffs' employees. There is no allegation that an administrative or regulatory agency has issued any document (i.e., a notice of charges, formal investigative order, summons or similar document) to Plaintiffs commencing a "formal administrative or regulatory proceeding" *against* Plaintiffs. This is one of the many factors that distinguish the cases cited by Plaintiffs in purported support of their argument that there is a formal administrative or regulatory proceeding against Plaintiffs.

For example, in *MBIA Inc. v. Federal Insurance Co.*, 652 F.3d 152 (2d Cir. 2011), the Securities and Exchange Commission (the "SEC") and the New York Attorney General commenced formal investigations against MBIA, and issued subpoenas to MBIA. *Id*. at 155-56.[4] Similarly, in *Protection Strategies, Inc. v. Starr Indemnity and Liability Co.*, No. 1:13-CV-0763, 2013 WL 10724338 (E.D. Va. Sept. 10, 2013), the NASA Office of the Inspector General issued a search and seizure warrant and a subpoena to PSI, and a United States Attorney issued a letter advising that it was investigating PSI for the purposes of civil liability in connection with PSI's participation in the Small Business Administration Section 8(a) program. *Id*. at *1. There the definition of a Claim included any "judicial, administrative, or regulatory proceeding," and did not, as the Policy does here, distinguish administrative and regulatory proceedings from criminal proceedings. *Id*. at *2. The court there held that the "warrant and the subpoena were a result of

---

[4] By its terms, the MBIA insurance extend broader coverage, including an "informal . . . proceeding or inquiry." *Id*. at 159.

legal proceedings that required a finding of probable cause, leaving no question that the government had identified PSI as a target for criminal and civil liability." *Id.*[5]

Here, no agency or regulator has commenced anything, let alone a "formal administrative or regulatory proceeding," through a notice of charges, etc. or any other document directed at Plaintiffs. Additionally, and as discussed more fully below, there is no factual allegation that to the extent any such "formal administrative or regulatory proceeding" even exists, it is actually "against" Plaintiffs, as required to constitute a Claim. Rather, in the absence of any factual allegations along those lines, it is equally (or actually more) plausible that Plaintiffs are third parties which potentially have information relevant to an investigation of others.

As set forth in Travelers' opening brief, the grand jury investigation, to the extent a "proceeding" at all, is undeniably a "criminal proceeding." The Policy is clear that such a proceeding is only a Claim following a "notice of charges" against the Insureds. Here, there is no notice of charges, and there certainly are no allegations of charges made against Plaintiffs. *See Desai*, 2014 U.S. Dist. LEXIS 122068, at *4 (recognizing that the subject insurance policy identified when criminal proceeding became a Claim (after an indictment) and that other parts of the definition of a Claim should be read to be consistent with the other); *Biochemics*, 924 F.3d at 640-41 (finding that part of definition of Claim that extended coverage for subpoenas reinforced finding that other parts of the definition did not).

---

[5] *See also Borstein*, 828 F.2d at 243 (IRS issued subpoenas); *Bodell v. Walbrook Ins. Co.*, 119 F.3d 1411, 1412-13 (9th Cir. 1996) (insured notified he was a target of investigation by Postal Inspection Service); *Ace Am. Ins. Co. v. Ascend One Corp.*, 570 F. Supp. 2d 789, 791-92 (consumer protection divisions served administrative subpoenas and demands).

### III. THE SUBPOENAS ARE NOT "FOR A WRONGFUL ACT" BY PLAINTIFFS

As shown above, Plaintiffs do not and cannot allege facts to support a conclusion that the subpoenas are "demands for non-monetary relief" or that they commence a "formal administrative or regulatory proceeding" against Plaintiffs, either of which, in this case, is definitively required for there to be a Claim under the Policy. However, Plaintiffs must not only meet one of those prerequisites, they must also allege sufficient facts to show that there is a Claim against Plaintiffs "for a Wrongful Act" by them.

Plaintiffs effectively concede that the subpoenas do not "allege" that Plaintiffs did anything wrong. Opp'n at 13. As recognized by the Sixth Circuit and other courts, absent an allegation of wrongdoing against the Insured, investigations do not assert a Wrongful Act, but rather seek to determine whether a Wrongful Act was committed. *See, e.g.*, *ProMedica*, 524 F. App'x at 247-48; *MusclePharm*, 712 F. App'x at 754-55. Plaintiffs contend, however, that the subpoenas are for a Wrongful Act by Plaintiffs because the subpoenas are a "matter asserted against them." Opp'n at 13. In doing so, Plaintiffs focus exclusively on the definition of a "matter" (e.g., "a situation or subject that is being dealt with"), and utterly fail to give meaning to the latter part of the phrase "asserted against" Plaintiffs. Opp'n at 13-14. The reason for this is obvious: the subpoenas, in seeking documents, do not assert anything against Plaintiffs.

The phrase "any matter asserted against" has a plain and common meaning, particularly when used in the definition of a "**Wrongful Act**." The definition, after referring to "actual or alleged act, error, omission, misstatement, misleading statement or breach of duty or neglect by" the Insured, includes "any matter asserted against the **Insured Organization**," as a catch all, but still part of the definition of what is a "**Wrongful Act**." *See, e.g.*, *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 512 (6th Cir. 2012) (applying ejusdem generis under Ohio

9

law in holding that the phrase "other matters" meant "something similar" to the specific terms that preceded it). The relevant definition from Merriam-Webster for "assert," when in the phrase "asserted against," is "to state or declare positively and often forcefully or aggressively." *Assert*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/assert (last accessed Apr. 28, 2020). "Against" is defined, in relevant part, as "in opposition or hostility to"; "not in conformity with: CONTRARY TO // against the law"; or "as a basis of disapproval." *Against*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/against (last accessed Apr. 28, 2020). As explained in *Desai*, in the phrase "'for a Wrongful Act,'" the word "'for'" means "'in response to; as requital of.'" 2014 U.S. Dist. LEXIS 122068 at *12 (quoting American Heritage Dictionary 512 (New Coll. Ed. 1978)).

Plaintiffs point to nothing in the subpoenas or any information they have received from the government, as they cannot, to contend that the subpoenas were issued to Plaintiffs in response to or as requital of something that has been "*asserted against*" Plaintiffs.[6] Accordingly, the subpoenas cannot reasonably be construed as a Claim against Plaintiffs for a Wrongful Act by Plaintiffs.

Plaintiffs recite that "a federal grand jury is empaneled for the express purpose of receiving evidence relating to an individual's or entity's alleged criminal conduct in violation of federal law." Opp'n at 13. Plaintiffs do not offer any facts, however, to show that the grand jury is receiving evidence of *Plaintiffs'* alleged criminal conduct rather than someone else's conduct.

---

[6] Plaintiffs employees' use of proffer letters in sitting for voluntary interviews does not mean that assertions have been made against the employees, and it certainly does not mean that something has been asserted against Plaintiffs. Proffer letters are understandably used by witnesses, subjects, and targets alike in criminal investigations to ensure that their voluntary statements cannot subsequently be used against them. *See, e.g.*, Duffy Law, "What's the Difference Between a Federal Target, Subject, and Witness," https://www.duffylawct.com/whats-the-difference-federal-target-subject-witness/ (last accessed Apr. 28, 2020).

With no warrants served or target letters directed at Plaintiffs, Plaintiffs ask Travelers and the Court to simply assume that the grand jury is investigating Plaintiffs' alleged criminal conduct and that the subpoenas are due to something having been asserted against Plaintiffs. Perhaps more accurately, Plaintiffs ask Travelers and the Court to provide coverage in response to a grand jury investigation even if Plaintiffs were subpoenaed only because they may have documents containing relevant information to others' potentially criminal conduct.

The absence of any assertion against Plaintiffs puts their claim for coverage not only at odds with *ProMedica* and its progeny, but with practically every case Plaintiffs rely upon in their Opposition. For example, in *Agilis Benefit Services, LLC v. Travelers Casualty & Surety Co. of America*, No. 5:08CV213, 2010 U.S. Dist. LEXIS 144499 (E.D. Tex. Feb. 24, 2010), the IRS alleged that certain Agilis executives (i.e., the individual insureds) were involved in promoting and operating tax evasion schemes, and that Agilis (i.e., the insured entity) was used in implementing those schemes. *Id*. at *2. Simultaneously with the service of a subpoena, the IRS executed a search warrant for Agilis's office. *Id.* at *10. The search warrant identified Agilis and its executives as "parties of interest" and authorized seizure of documents relating to the tax evasion schemes. *Id.* An "Application and Affidavit for Search Warrant," which was attached to the warrant and provided to Agilis, stated that the "Special Agent had reason to believe that the items to be seized were evidence of violations of 26 U.S.C. § 7201, 26 U.S.C. § 7212, and 18 U.S.C. § 371." *Id.* at *10-11.[7]

Likewise, in *Astellas US Holding, Inc v. Starr Indemnity Liability Co.*, No. 17 CV 8220, 2018 U.S. Dist. LEXIS 89725 (N.D. Ill. May 30, 2018), the United States Department of Justice

---

[7] Plaintiffs offer no legal support for their contention that *Agilis*, although factually distinguishable and decided under Texas law, should somehow be controlling in this case. *See* Opp'n at 8.

11

("DOJ") issued a subpoena to Astellas, a pharmaceutical company, seeking documents "relating to the DOJ's industrywide investigation of pharmaceutical companies for alleged 'Federal health care offenses.'" *Id*. at *3. Specifically, as to Astellas, the DOJ alleged that its "contributions to independent charity patient assistance programs violated applicable law." *Id*. at *4. Further, in a tolling agreement between the DOJ and Astellas, the agreement recounted that the conduct being investigated was "'the possible violation of Astellas . . . of various federal criminal statutes . . . in connection with Astellas's payments to "501(c)(3)" organizations that provide financial assistance to Medicare beneficiaries.'" *Id*. at *4-5 (citations omitted); *see also Conduent State Healthcare, LLC v. AIG Specialty Ins. Co.*, No. N18C-12-074 MMJ CCLD, 2019 WL 2612829, at *1 (Del. Super. Ct. June 24, 2019) (issued CID advised that "the Texas Attorney General 'was investigating the possibility of Medicaid fraud involving the prior authorization process for orthodontia services'" which Conduent processed); *Prot. Strategies*, 2013 WL 107244338, at *2 ("[T]he warrant and the subpoena were a result of legal proceedings that required a finding of probable cause, leaving no question that the government had identified PSI as a target for criminal and civil liability."); *Syracuse Univ. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 975 N.Y.S.2d 370, 370 (N.Y. Sup. Ct. 2013) (investigation of university's handling of complaints of sexual assault by basketball coach); *Bodell*, 119 F.3d at 1412-13 (postal inspection of insured attorney for alleged participation "in a scheme to defraud insurance companies by needlessly and intentionally expending and prolonging personal-injury litigation in order to collect higher fees").

Here, with nothing asserted against Plaintiffs to constitute a Wrongful Act, Plaintiffs argue that they nevertheless are entitled to coverage under Ohio's duty to defend law. Opp'n at 16. But Plaintiffs cannot simply hypothesize the existence of a Claim for a Wrongful Act to gain defense coverage. A Claim must first exist, with allegations *against the Insured* potentially within the

12

scope of the Policy, for there to be defense coverage. *See Cincinnati Specialty Underwriters Ins. Co. v. Larschied*, No. 1-14-01, 2014 Ohio App. LEXIS 4036, at *13 (Ohio Ct. App. 2014) (quoting *Motorists Mut. Ins. Co. v. Nat'l Dairy Herd Improvement Ass'n, Inc.*, 750 N.E.2d 1169, 1176 (Ohio Ct. App. 2001)). "Even under the liberal notions of notice pleading it would be inherently unfair to require the insurer to provide a defense where the pleadings failed to notify, even arguably, that the insured is being sued on a claim covered by the policy." *Motorists Mut. Ins. Co.*, 750 N.E.2d at 1176-77.

Plaintiffs accordingly pivot to the purported "seriousness" of grand jury subpoenas. They detail at length the complexity of procuring a grand jury subpoena, potential sanctions for failing to comply with one, and the nature and potential impact of voluntary proffer agreements (which Plaintiffs fail to provide the Court for review). *See* Opp'n at 13-14. But none of this is relevant to the question before the Court: whether the subpoenas served on Plaintiffs are a Claim for a Wrongful Act. Contrary to Plaintiffs' implication, the gravity of a grand jury proceeding does not mean that all issued subpoenas *assert matters against* the recipients of those subpoenas. Whether anything is asserted against the recipient is resolved by considering the contents of the subpoenas themselves and any associated assertions or allegations against the recipient.

Here, the operative documents for purposes of evaluating the duty to defend are the subpoenas themselves. As detailed above, their contents do not potentially or arguably state any matters, such as Wrongful Acts, that would trigger Travelers' duty to defend. To conclude otherwise, would "effectively impose an absolute duty on [Travelers] to provide a defense to [Plaintiffs] regardless of" the contents of a subpoena every time and for whatever reason Plaintiffs are served with one. *Motorists Mut. Ins. Co.*, 750 N.E.2d at 1176-77.

Business enterprises are routinely involved in events that are "serious" and require the assistance of legal counsel, but that does not mean that a Claim for a Wrongful Act has been asserted implicating coverage under a liability insurance policy. Relatedly, contrary to Plaintiffs' contention, the absence of coverage for events that are not a Claim for a Wrongful Act does not "nullify any coverage whatsoever under the Policy." Opp'n at 6. The Policy covers a wide range of organizational liability risks, but it does not afford coverage for matters that do not yet arise to or constitute a Claim for a Wrongful Act, as those terms are defined in the Policy.

## IV. DISMISSAL AT THE PLEADINGS STAGE IS APPROPRIATE

Plaintiffs do not dispute that the subpoenas and the Policy are incorporated into their First Amended Complaint, and are properly before the Court on Travelers' Motion to Dismiss. Moreover, Plaintiffs do not dispute that, under Ohio law, "[t]he construction of an insurance contract is a matter of law to be determined by the court." *First Defiance Fin. Corp. v. Progressive Cas. Ins. Co.*, 688 F. Supp. 2d 703, 706 (N.D. Ohio 2010) (citing *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E. 2d 955 (Ohio 1999)). As found by numerous courts, including the Sixth Circuit, the insurance policy terms "Claim for a Wrongful Act," along with the definitions provided in the policy, are unambiguous in their application to investigatory subpoenas. Accordingly, Travelers' Motion to Dismiss can and should properly dispose of this case.

**CONCLUSION**

For the foregoing reasons, and those stated in Travelers' Motion to Dismiss (ECF No. 22), Travelers respectfully asks the Court to grant the Motion to Dismiss.

Dated: May 1, 2020

Respectfully submitted,

*/s/Monica A. Sansalone*
**MONICA A. SANSALONE (#0065143)**
Gallagher Sharp LLP
Sixth Floor – Bulkley Building
1501 Euclid Avenue
Cleveland, OH  44115
(216) 241-5310 Telephone
(216) 241-1608 Facsimile
E-mail: mansanslone@gallaghersharp.com

-and-

**THOMAS J. JUDGE** (*pro hac vice*)
**JASON C. REICHLYN** (*pro hac vice*)
Dykema Gossett PLLC
1301 K Street NW
Suite 1100 West
Washington, D.C. 20005
(202) 906-8600 Telephone
Email: tjudge@dykema.com
Email: jreichlyn@dykema.com

**Counsel for Defendant Travelers Casualty and Surety Company of America**

**Certificate of Compliance With Local Rule 7.1(f)**

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that this action has been assigned to the standard case management track and that this document complies with the page limitations in Local Rule 7.1(f).

*/s/Monica A. Sansalone*
**MONICA A. SANSALONE (#0065143)**

15

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 1, 2020, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

Respectfully submitted,

*/s/Monica A. Sansalone*

**MONICA A. SANSALONE (#0065143)**

**Counsel for Defendant Travelers Casualty and Surety Company of America**